# DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

| | | |
|---|---|---|
| **MERVIN JOHN** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **JOHN MCHUGH, et al** | : | **NO. 2005 - 0047** |

## MEMORANDUM OPINION

**Savage, J.**                                                                                   **September 30, 2010**

### Introduction

This case arises out of plaintiff Mervin John's ("John") separation from the Virgin Islands Army Reserve National Guard ("VIARNG"). John complains that he was deprived of due process and equal protection, was wrongfully discharged, and suffered emotional distress when he was separated without a hearing or a satisfactory explanation for his separation. He asserts causes of actions under 42 U.S.C. § 1983; the Virgin Islands Wrongful Discharge Act, 24 V.I.C. § 76; and common law. He contends that as a member of the National Guard, he was a state, rather than a military, employee.

John named as defendants: John McHugh,[1] Secretary of the Army ("Secretary"); the National Guard Bureau ("NGB"); the VIARNG; and Dennis Howell ("Howell"), Director of Human Resources for the VIARNG. Howell is named in his official capacity only.

The Secretary and the NGB have moved to dismiss under Fed. R. Civ. P. 12(b)(1), (5) and (6). They argue that John has not properly served the federal defendants and he is not entitled to a mandatory extension of time because he has not shown good cause for

---

[1] John had originally named Les Brownlee, the Secretary of the Army, as a defendant. Pursuant to Fed. R. Civ. P. 25(d)(1), McHugh, the current Secretary, was substituted as a defendant.

this failure.  They also contend that John's damages claim is barred by the *Feres* doctrine and sovereign immunity, and his equitable relief claim is barred because he does not have a protected liberty interest in continued employment with the VIARNG.  Lastly, they assert that John's damages claim for breach of contract is limited to $10,000.00 under the Tucker Act, 28 U.S.C. § 1491 (2008).

The VIARNG and Howell have also moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.  They argue that John's claims are barred by the *Feres* doctrine because he was an active member of the VIARNG engaged in active military service when the alleged conduct occurred.

Opposing the motions, John asserts that the *Feres* doctrine does not apply because his discharge was not the result of military discipline.  He also claims that he properly served the Secretary and NGB by mailing them a copy of the complaint with a waiver of service form.  In the alternative, he requests an extension of time to serve the federal defendants because they had actual notice of the complaint and suffered no prejudice.

The motions will be granted.  John's damages claim is barred by the *Feres* doctrine. Furthermore, he did not properly serve the Secretary and the NGB, and he is not entitled to a mandatory extension of time.  Nor will we grant a permissive extension.  Even if we did, John could not prevail on his claims.  John cannot make out a procedural due process claim because he does not have a protected property or liberty interest in his continued employment with the VIARNG.

**Facts**[2]

John was a member of the United States Navy from February 9, 1978 to March 8, 1983.[3] After being honorably discharged from the Navy, John became an enlisted member of the VIARNG, under 32 U.S.C. § 502(f), in 1986 and a member of the Active Guard Reserve on June 27, 1987. His Oath of Extension of Enlistment or Reenlistment, dated April 14, 2001, provided that his term of service expired on June 30, 2006.

In April of 2003, John was notified that his records were reviewed by the Active Service Tour Continuation Board ("ASTCB"), which decided not to retain him. On June 11, 2003, Howell, on behalf of the VIARNG, notified John that he would be involuntarily separated one year later on June 11, 2004. On August 31, 2004, John was involuntarily separated because he had reached 22 years of active service.[4]

As a result of the separation, John lost his benefits. He also suffered emotional distress, including lack of sleep, irritability, and depression that he alleges will require medication and psychiatric counseling.

**Discussion**

A motion to dismiss for failure to state a claim "tests the legal sufficiency of plaintiff's claim." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006). When considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), all well-

---

[2] The facts as alleged by John are accepted as true and all reasonable inferences are drawn in his favor. We do so even though his allegations are not entitled to such deference in considering a Rule 12(b)(1) motion.

[3] Mervin John's Certificate of Release or Discharge from Active Duty from the United States Navy attached as Ex. B to *Def. Secretary of the Army's Memo in Support of Motion to Dismiss* (Doc. No. 20).

[4] According to the dates in his complaint, he had only acquired 18 years of service. But, in the same complaint, he avers that he was involuntarily separated for having acquired 22 years of service.

pleaded allegations in the complaint are accepted as true and viewed in the light most favorable to the plaintiff. *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 334 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)). The complaint must show that the plaintiff is entitled to relief. Thus, where a bar to relief is apparent from the face of the complaint, dismissal under Rule 12(b)(6) may be granted. *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001) (citing *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994)).

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) challenging jurisdiction is treated essentially the same as a Rule 12(b)(6) motion. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). However, a jurisdictional motion challenging the factual underpinnings of a court's jurisdiction under Rule 12(b)(1) requires less deference to the plaintiff's complaint. *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008). Because a "factual attack" in a Rule 12(b)(1) motion to dismiss addresses the court's power to hear the case, the court attaches no presumption of truthfulness to the plaintiff's allegations. *Id.* at 139. We shall, however, weigh not only the available jurisdictional evidence in the complaint but also materials outside the complaint to satisfy ourselves that the exercise of federal jurisdiction is proper. *Id.* at 145. Hence, we may consider affidavits and depositions. *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002) (citations omitted); Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 1363 (1990).

### *Feres Doctrine*

The *Feres* doctrine of intra-military immunity, as originally conceived, immunizes the government from claims under the Federal Tort Claims Act for a serviceman's injuries

sustained during military service. *Feres v. United States*, 340 U.S. 135, 146 (1950). The rationale for the doctrine is to maintain the special relationship between military personnel and their superior officers, to avoid the eroding effect legal actions would have on military discipline and obedience, and to prevent the consequences of permitting actions for negligent acts committed or orders given while in the course of duty. *Matreale v. New Jersey Dept. of Military & Veterans Affairs*, 487 F.3d 150, 153 (3d Cir. 2007) (quoting *United States v. Brown*, 348 U.S. 110, 112 (1954)).

The doctrine applies to claims brought by members of the National Guard. *Matreale*, 487 F.3d at 155-56. *See Loughney v. United States*, 839 F.2d 186 (3d Cir. 1988); *Jorden v. National Guard Bureau*, 799 F.2d 99 (3d Cir. 1986). For purposes of applying the *Feres* doctrine, a member of a state national guard unit is considered a federal serviceman when serving under orders issued pursuant to 32 U.S.C. § 502(f)(1).[5] *Matreale*, 487 F.3d at 155; *Loughney*, 839 F.2d 186. Because John was a member of the VIARNG when the complained-of conduct occurred, he is deemed a federal serviceman. Thus, the *Feres* doctrine covers him.

The question then becomes whether *Feres* bars his claims. If it does, his damages claim must be dismissed.

The scope of intra-military immunity conferred by the *Feres* doctrine has been expanded beyond the original *Feres* holding that barred tort claims under the Federal Tort

---

[5] 32 U.S.C. § 502(f)(1) permits the Secretary of the Army or the Air Force to order a member of the National Guard to attend training with or without the member's consent. 32 U.S.C. § 502(f)(1).

5

Claims Act. It also bars *Bivens* actions[6] asserting federal constitutional claims brought by military personnel to recover damages from their superior officers. *Chappell v. Wallace*, 487 U.S. 269, 304-05 (1983). *Feres* immunity reaches § 1983 claims brought by military personnel against state military officers for constitutional violations. *Jorden*, 799 F.2d at 106. It also covers state law claims brought by military personnel. *Jaffee v. United States*, 663 F.2d 1226, 1239 (3d Cir. 1981). Finally, even the military's failure to follow its own procedures and regulations will not prevent application of the *Feres* doctrine when it would otherwise be applicable. *Anderson v. United States*, 724 F.2d 608, 611 (8th Cir. 1983) (citing *Calhoun v. United States*, 475 F. Supp. 1, 4 (S.D. Cal. 1977), *aff'd*, 604 F.2d 647 (9th Cir. 1979), *cert. denied*, 444 U.S. 1078 (1980)).

John's damages claim arising out of alleged federal constitutional violations and territorial causes of action is barred by the *Feres* doctrine. John was separated while he was on active duty status with the VIARNG. The action directly affecting his military status was taken by his military superiors. Thus, *Feres* applies to John's complaint against his superiors for their acts or omissions during his military service, and his damages claim is barred.

Despite the *Feres* doctrine's expansive reach, not all military matters are insulated from judicial review. Although claims for damages against superior officers may be barred, claims for injunctive relief are not necessarily precluded. *Jorden*, 799 F.2d at 110. Indeed, in *Jorden,* the Third Circuit held that the plaintiff, who had been discharged from his military

---

[6] "'A *Bivens* action, which is the federal equivalent of the § 1983 cause of action against state actors, will lie where the federal defendant has violated the plaintiff's rights under color of federal law.'" *Sarullo v. United States Postal Serv.*, 352 F.3d 789, 794 n.3 (3d Cir. 2003) (quoting *Brown v. Phillip Morris, Inc.*, 250 F.3d 789, 800 (3d Cir. 2001)).

and civilian positions in the Pennsylvania Air National Guard, could proceed with his equitable claim for reinstatement, even though his claim for damages was barred by *Feres*. *Id*. Only when it would require the court "'to run the military'" must the court decline to entertain a request for equitable relief. *Id*. at 111 (citing and quoting *Dillard v. Brown*, 652 F.2d 316, 322 (3d Cir. 1981)) (citations omitted). Nevertheless, whether injunctive relief against the military is appropriate must be determined on a case-by-case basis. *Id*.

Because a claim is justiciable does not mean a court may second-guess the military. The court must still determine whether there has been an infringement of the plaintiff's individual freedom and, if so, whether "the military justification outweighs" it. *Dillard*, 652 F.2d at 323-24. If the balance tilts in favor of the military, relief will be denied. *Id*. at 324. This determination necessitates a merits analysis. *Id*.

At this stage of the proceedings, we cannot evaluate the basis for the mandatory retirement requirement. It may be that the defendants can justify it. If they can, we could not question it. On the other hand, absent justification for the rule, we could determine that John's constitutional rights were violated. *Id*. Therefore, as in *Jorden*, John's equitable relief claim is not barred by *Feres*.

*Procedural Due Process*

John avers that he was denied due process because he had not been given a hearing before his separation. To establish a § 1983 claim based on the Fourteenth Amendment, he must prove that he was deprived of a liberty or property interest under color of state law without due process. *Burns v. PA Dep't. of Correction*, 544 F.3d 279, 284 (3d Cir. 2008) (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). John cannot do so. He had no property or liberty interest of which he could have been deprived. A reserve

military officer does not have a property interest in his continued military employment. *Doe v. Garrett*, 903 F.2d 1455, 1462 (11th Cir. 1990); *Alberico v. United States*, 783 F.2d 1024, 1027 (Fed. Cir. 1986); *Sims v. Fox*, 505 F.2d 857, 861-62 (5th Cir. 1974); *Pauls v. Sec'y of the Air Force*, 457 F.2d 294, 297 (1st Cir. 1972)*.*

Under National Guard Regulation (AR) 600-5, an enlisted soldier may be separated after 20 years of active federal service. The regulation applies to reserve soldiers, like John, serving under 32 U.S.C. § 502(f). Depending upon the serviceman's grade, he may be retained beyond 20 years of active federal service. However, whether to retain a serviceman with a grade of E-7 beyond the 20 year active service mark is within the National Guard's discretion. Even if the National Guard extends the serviceman's tenure, he still must be released after 24 years of active federal service.[7]

As a member of the VIARNG with an E-7 grade serving under 32 U.S.C. § 502(f), John had a property interest in his employment with the VIARNG for 20 years of active federal service. After 20 years, the VIARNG had the discretion to release him or extend his tour of service. John reached 20 years of active federal service in 2001. His employment was extended for two years. After 22 years of active service, the ASTCB decided not to retain him. Therefore, after reaching 20 years of active federal service, John no longer retained a property interest in his continued employment with the VIARNG protected by the Fourteenth Amendment.

Likewise, John cannot show a protected liberty interest in continued active reservist employment. To make out a cause of action based upon a deprivation of a liberty interest,

---

[7] National Guard Regulation 600-5 at 5, attached as Ex. C to *Def. Secretary of the Army's Memo in Support of Motion to Dismiss* (Doc. No. 20).

a plaintiff must establish that the reason given for the separation was both false and so harmful to his reputation that it adversely affected his ability to obtain other employment. *Karr v. Castle*, 768 F. Supp. 1087, 1096 (D. Del. 1991), *aff'd without opinion sub nom., U.S. v. Carper*, 22 F.3d 303 (3d Cir. 1994), *cert. denied*, 513 U.S. 1084 (1995). To be considered false, the reason for separation must be factually disputed and have a "significant bearing on the employee's reputation." *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000) (quoting *Codd v. Velger*, 429 U.S. 624, 627-28 (1977)). The false basis must also stigmatize the former's employee's reputation by either: (1) damaging the former employee's "good name, reputation, honor, or integrity"; or (2) causing a stigma which precluded the former employee from other employment opportunities. *Br. Of Regents of State Colleges v. Roth*, 408 U.S. 564, 573 (1972).

John has not alleged and cannot demonstrate that his separation from the VIARNG has caused any damage to his name, reputation, honor, or integrity. Neither has he alleged that the reason for separation created a stigma which precludes him from future employment opportunities. John claims that the VIARNG involuntarily separated him without a hearing. However, involuntary separation alone does not implicate a liberty interest. *Karr*, 768 F. Supp. at 1097 (citing *Martin v. Unified School Dist. No. 434, Osage County, Kansas*, 728 F.2d 453, 456 (10th Cir. 1984)). The reason given for his separation, that he had reached the mandatory retirement date, does not reflect upon his reputation and had no bearing on his employability. Thus, because he has neither a liberty nor a property interest in his military employment beyond the mandatory retirement date, he has not alleged the necessary elements of a cause of action for violation of his due process rights.

*Service of Process*

The United States and the NGB have moved to dismiss for insufficient service of process under Fed. R. Civ. P. 12(b)(5), contending that John failed to comply with the procedural requirements for proper service mandated by Rule 4(i). John has the burden of proving the validity of service. *Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir. 1993). He has not done so.

The United States and its agencies may not be served with process as other defendants may. Instead, a plaintiff must satisfy the specific requirements of Fed. R. Civ. P. 4(i), which states:

> (1) **United States**. To serve the United States, a party must:
> (A)(i) deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought–or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk–or (ii) send a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office;
> (B) send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C.; and
> (C) if the action challenges an order of a nonparty agency or officer of the United States, send a copy of each by registered or certified mail to the agency or officer.

In order to comply with Rule 4(i), John was required to take two steps. First, he had to deliver a copy of the complaint and summons to the United States Attorney's Office in the Virgin Islands or to an employee there designated to accept service. Second, he had to mail, using certified or registered mail, copies to the United States Attorney General in Washington D.C., the Secretary, and the NGB.

Instead of serving the Secretary under Rule 4(i), John attempted to use the waiver of service provision, Fed. R. Civ. P. 4(d). That rule provides that a plaintiff may request a

waiver of service from the defendant by submitting "a copy of the complaint, two copies of a waiver form, and prepaid means for returning the form." Fed. R. Civ. P. 4(d)(1)(c). When the acknowledgment form has not been returned within the 120 day time period, "personal service is required to effectuate service." *Green v. Humphrey Elevator and Truck Co.*, 816 F.2d 877, 879-80 (3d Cir. 1987).

John argues that he served the United States and the NGB by sending the complaint and a request for waiver by regular mail. He contends that service was made when he filed unsigned waivers in July 2006. John's argument fails for two reasons. First, the waiver of service provision does not apply to federal defendants. Second, even if it did, he did not satisfy its requirements.

Rule 4(d)'s waiver of service method does not apply to service on the United States or its agencies. *Tuke v. United States*, 76 F.3d 155, 156 (7th Cir. 1996). It only applies to "[a]n individual, corporation, or association that is subject to service under Rule 4(e), (f), or (h)." Fed. R. Civ. P. 4(d)(1). The United States may not be served under these provisions. Instead, it must be served in accordance with the specific requirements of Rule 4(i).

Contrary to John's contentions, service under Rule 4(d) is not effectuated until the waiver forms are signed and returned. Even if the federal defendants could be served under Rule 4(d), because the waiver forms were not signed and returned within the 120 day time period, no service was effectuated.

Rule 4(d) affords a method of serving process by sending to the defendant a summons, a complaint and two copies of a "notice and acknowledgment" form, via first-class mail. Upon receiving the documents, the defendant may either acknowledge service

or do nothing.  Where the defendant signs and returns the acknowledgment, service is made.  On the other hand, where the defendant does nothing, the plaintiff is required to make personal service.  In other words, merely sending the summons, complaint and waiver forms to the defendant does not effectuate service under Rule 4(d).  *Umbenhauer v. Woog*, 969 F.2d 25, 29 (3d Cir. 1992); *Stranahan Gear Co., Inc. v. NL Industries*, 800 F.2d 53, 56 (3d Cir. 1986).  Thus, even if the waiver of service provision was an alternative means of serving the Secretary and the NGB, John did not satisfy its requirements.

In summary, Rule 4(d)'s waiver of service is not an alternative method of serving the United States or it agencies.  Only the method set forth in Rule 4(i) is acceptable.  In this case, John did not satisfy the requirements of Rule 4(i).  He never personally served the United States Attorney's Office in the District of the Virgin Islands.  Nor did he attempt to serve the Attorney General at Washington D.C., the Secretary, or the NGB.  Instead, he simply mailed a notice of the complaint and the waiver form to the United States Attorney's Office in St. Croix.  Mailing copies of the complaint and summons to the defendant is insufficient.  Delivery, as used in Rule 4(i)(1)(A)(i), means personal service or by registered or certified mail.  *Dowdy v. Sullivan*, 138 F.R.D. 99, 100-01 (W.D. Tenn. 1991); *see also Robbins v. Brady*, 149 F.R.D. 154, 155 (C.D. Ill. 1993) (collecting cases).

John sent copies of the complaint and waiver forms to these defendants by regular mail only.  He was required, however, to send copies of the complaint and summons to them by certified or registered mail.  Therefore, John failed to properly serve the Secretary and the NGB within 120 days in accordance with Rule 4.

*Extension of Time*

Upon a showing of good cause, the time for service must be extended.  *Boley v. Kaymark*, 123 F.3d 756, 758 (3d Cir. 1997) (citing *MCI Telecomm. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1098 (3d Cir. 1995), *cert. denied*, 519 U.S. 815 (1996)).  Even absent a showing of good cause, a permissive extension of time may be granted.  *Id.* (citing *MCI Telecomm. Corp.*, 71 F.3d at 1098).

John offers no excuse for his failure to effectuate service as required by Rule 4(i).  We decline to speculate why he did not follow the specific requirements of the Rule.  Thus, we can not conclude that there is good cause to extend the time for service.

In the absence of good cause, a discretionary extension of time for service may be granted.  A court may grant a permissive extension of time unless doing so would cause prejudice to the defendant.  *Boley*, 123 F.3d at 758-59.  The Third Circuit noted that "prejudice 'involves impairment of defendant's ability to defend on the merits.'"  *Id.* at 759 (quoting *Nat'l Union Fire Ins. Co. v. Barney Assoc.*, 130 F.R.D. 291, 294 (S.D.N.Y. 1990)).  Actual notice to the defendant that an action has been filed precludes a finding of prejudice.  *Id.*

John contends that there is no prejudice because the defendants were on actual notice of the complaint when they received a notice of the complaint with the waiver of service form on July 9, 2005.  The Secretary and the NGB represent that an exhaustive records search failed to reveal any proof that the mail was received in the United States Attorney's Office in the Virgin Islands.

The Secretary and the NGB argue that they will be prejudiced because the superior officers responsible for John's involuntary separation are deployed and unable to testify.

Although this may be true, the superior officers are within the Secretary and the NGB's control and may be brought back to testify. We cannot conclude that these defendants would be prejudiced by allowing John to serve them now. However, because John has not taken any steps to cure the service deficiency after a history of dilatoriness and inaction, we decline to grant a permissive extension of time.

The motion to dismiss, which raised the service issue, was filed on December 31, 2008. Since that time, John has taken no remedial action. Despite notice that he had not made proper service, he did not file a motion to extend the time to serve the federal defendants. Instead, he responded to the motion by insisting, in the face of established law to the contrary, that his purported service was proper.

**Conclusion**

John's damages claim is barred by the *Feres* doctrine. Additionally, he does not have a property or liberty interest that can form the basis of a procedural due process claim under § 1983. He has also failed to serve the Secretary and the NGB in accordance with Rule 4(i). He is not entitled to a mandatory extension of time, and will not be granted a permissive extension of time. Therefore, the motions to dismiss will be granted.